Good morning, Your Honours. I am Steve Gupta, representing Physicians for Integrity in Medical Research. The subject of this lawsuit is a surgical device called Al-Air. It is a small probe that is inserted through the mouth into the lungs, where it is heated by radiofrequency waves and this burns parts of the lungs. This is supposed to alleviate asthma. The company selling this device invented this surgery. There was never this surgery before for asthma or for any other medical condition. The issue today is stamming. The plaintiff... I was going to say, Mr. Gupta, we understand the issues. You will find we have pretty well read through this stuff and know where we are and it seems to me stamming is the next real issue here. You may want to get there. To get stamming, the plaintiff has to show, one, that there was an injury that was concrete and imminent, two, that the injury was fairly traceable to defendant's actions, and three, that a favorable ruling from the court would redress the injury. We have a doctor who had to spend uncompensated time explaining that Al-Air is neither safe nor effective. Let's say this time is worth $20. That's $20 worth of actual injury. Where do we see it? Pardon? Where do we see it? You say, you said, I think you said in your brief at least, that he might have to explain it, that it might cause him to do this, that or the other. Where do we see that he did and that he did have to do it? The declaration from the doctor says he did it and he's going to have to do it again. Every time a new patient comes in, this is, the doctor is an asthma specialist. Asthma is a very common condition. Well, as I understood it, there was only one prior time where he spent time explaining it. That is correct, Your Honor. That's all there is in the record, right? That is correct, Your Honor. And that's not really controlling when you seek future relief, is it? No, it's not. But the future instance is going to happen for sure, because asthma is a common condition. The doctor is going to see asthma patients in future. And when the new patients come in, he'll have to explain them all the treatment options, including surgery. And in fact, if I were to, I was just trying to boil this down, it seems to me that all these other conversations will be in the future, and they will only happen if somebody who he doesn't control asks the question, correct? No, Your Honor. The doctor has to give all the treatment options and has to explain the So the conversation is going to take place in future for sure. Has anybody ever left the doctor to go to others who would recommend it? It didn't seem to me there was any evidence in the record to suggest that. Your Honor, the surgery was recently introduced. It was not available in Southern California. You didn't answer my question. Has there ever been a patient leave him to go to others? The doctor doesn't know, Your Honor, because when the patients leave, they don't tell them. So no is the answer? Yes, probably. Okay. One criticism is that the doctor can charge extra for extra time spent. This is not practical. Doctors' fees are regulated by physician fee schedule. The physician fee schedule is a 1,000-page, single-spaced document published every year by Center for Medicare Services. CMS is a federal agency that takes into account the number of patient complaints, the number of Let me back you up just a little bit before you get to that. It seems to me, and I'm not sure, but it just seems to me that third-party actions seem to be the only basis for any We really have to know whether the patients even know about a layer. Is it a layer? Yes, Your Honor. We have to know whether they even ask the doctor about a layer. We need to know whether they leave him and seek treatment by somebody else to get a layer. And we need to know whether to believe the FDA rather than him. What each one of these are third-party actions that we have to kind of understand in order to get to where you want to go, don't we? Your Honor, the patient-doctor interaction is a direct result of FDA's approval of an unsafe device. I appreciate you want to just give your argument, but please answer my question. My worry is that it's all third-party actions that I have to think about here. Would you agree? I mean, I'm trying to think of the many ways that this could happen. One, we don't know whether they even know about it. Secondly, we don't know whether they'll ask the doctor about it. Thirdly, we don't know whether they'll really leave him and go someplace else if he tells them about it. And third, we don't know whether they'll believe the FDA or him. All these relating to third-party actions, which really hits at the heart of your argument here, doesn't it? Your Honor, these are all dependent upon FDA actions. If FDA had not approved the device, there would be no such discussions. We're not really talking about that. We're talking about what your client must show. The patients know about the device, or they may not know about the device, but the device is advertised on TV and on Internet. Even if the patient doesn't ask for the device, the doctor has an obligation to tell about the device and explain the procedure. Whether the patient is leaving the doctor or not is very difficult to determine because Because they control that, right? Because the patients don't tell the doctor why they're leaving. They control it. The patients control it, yes, Your Honor. And whether they believe the FDA rather than the doctor, they control that, too. Your Honor, just imagine a patient going to a doctor for the first time, and the doctor telling him that the latest and the best, the latest and the newest treatment, as advertised on TV and Internet, is neither safe nor effective. Countering the FDA expert takes a lot of time and effort, and always leaves a certain amount of uncertainty. So it basically goes to the issue of the doctor's credibility, and the doctor loses some amount of credibility. Did you review Diamond v. Charles? I'm afraid I did not. The United States Supreme Court case? I'm afraid I did not, Your Honor. Okay. Well, in that case, the pediatrician sought to defend a state law regulating abortions. And if the law were overturned, there would be fewer live births, and he would have had less to speculative to allege injury. And I was going to ask you how your case differentiated from that. Your Honor, the case rests on injuries because of spending uncompensated time with the patient, which has happened, and which is definitely going to happen in the future. The pediatrician did not have any actual injuries at that time. This is a definite injury, which is concrete and particular to the doctor. Anything else? Your Honor, I may add that surgery is a little bit unique in the sense that patients undergoing the surgery, as well as the surgeon performing the surgery, have no way of knowing whether the surgery is making the asthma worse or better. The complications of surgery are same as complications of asthma. They are indistinguishable. The benefit of surgery under the best-case scenario are so marginal that they're not clinically noticeable. The surgeons and the patients, they have the surgery because they believe it's safe and effective, because FDA says so. Your Honor, I'll say rest of my time for rebuttal. Okay. Thank you. Mr. Waldman. Thank you. May it please the Court, my name is Joshua Waldman. I'm here from the United States Department of Justice representing the affilee, the FDA. The district court in this case correctly dismissed the case for lack of standing. Neither the plaintiff organization nor its member, Dr. Gupta, have identified any non-speculative cognizable injury, in this case that's fairly traceable, to the FDA's continued approval of ALAIR. There's no dispute here that the doctor or any of his patients will be harmed by ALAIR. The whole point of the litigation is he doesn't intend to use it and recommends that other people don't use it. So there's no direct harm from the device itself, doesn't cause any financial harm, but the plaintiff, that was expressly stated in the complaint and all of the other. Why isn't uncompensated time spent advising patients about the disadvantages of this treatment? Why isn't that non-speculative harm? Well, the only thing that we have in the declaration is about one person that has asked some questions, and there's nothing in that complaint that sort of talks about the money, what the compensation was, and certainly nothing that shows meets the certainly impending standard that you need for prospective relief. Let's say, because presumably he could have amended the complaint to say that if he really believes it, so let's say that the complaint had alleged that I'm spending, you know, I'm going to have to spend hundreds of hours of completely uncompensated time. Would that change the analysis? Well, that would certainly make it from speculative to non-speculative, but then you have the question of whether that injury is fairly traceable to the FDA. And since the FDA doesn't set compensation schemes, what was mentioned here is CMS or maybe it's private insurance, that's something. The FDA doesn't regulate what insurance pays. We don't know. I'd have to know in that situation whether these patients normally, you know, maybe they've had it in their pockets, but all those things are not regulated by the FDA. The FDA regulates the sale of drugs and devices in interstate commerce, not doctor compensation. So I think the answer would remain the same. It would just, you get over the speculativeness hurdle, but you still have another problem. So, I mean, I think all of the injuries here, claimed injuries here, have the problem of being too speculative and not enough in the complaint. But even if there was something more concrete, it's just injuries that can't be fairly traced to the FDA. As Judge Smith was pointing out, the whole doctor-patient relationship is sort of an independent choice of third parties, of the patients. If they don't have confidence in the doctor or choose to leave, that could be for any number of reasons, some of which may have to do with the layer, many of which may not. But this is all, in addition to being speculation, something that the FDA simply doesn't regulate by approving a layer. They regulate devices. They don't regulate the doctor-patient relationship. And patients are allowed to make their own independent choices, and that's something that's just not fairly traceable to the FDA. So who could challenge the FDA's regulation? Well, I think in a variety of situations, you could have different types of suits. For example, if the FDA approved the drug, it's possible that another manufacturer who thinks that they have sort of a market share theory might have a claim. Somebody who, a great example is the Second Circuit has a recent decision, which we informed you about in the 28-J letter, of someone who, because of the particular allegations in their declaration, unavoidably came into contact with a drug that was approved by the FDA because they were forced to by their employer. And that's someone who has an actual harm. They don't want to take this, but they have to because of their circumstances. And that was enough to get past the motion to dismiss, according to the Second Circuit. Well, that's the reason for my question, because I read, when I read your 28-J letter, I said to myself, well, here's one, but is this the only one? And then I was trying to think, how do we challenge these things? Am I really saying that I'm eliminating challenges to FDA work that is really not, shouldn't have been done when I eliminate this challenge? Well, it depends on what you mean by challenge, Your Honor, because one of the points of the standing doctrine is that many disputes are really committed to the legislative and executive branches, and if you have a general complaint about what the state of the law is, you direct your challenges there. And the judiciary only gets involved when it becomes... In the making of the decision? You're talking in the administrative process? Well, in many agency decisions, yes, but also one of the things that you can do is you can file a citizen petition, which is what happened here, and that's part of the process where if the citizen thinks the agency didn't get enough information from the manufacturer, they can submit their reasons, and that's part of the process. There's also ongoing reporting requirements from the manufacturer. If they become aware of something that shows that it's not safe, they have an obligation to report that to the FDA. But these are all how the executive branch and agencies within it deal with these types of problems, and the judiciary only gets involved when the stakes become so concrete and particularized that they meet the Article III injury requirements and all the other limitations. In this case, we don't have that. In some cases, you might, depending on the circumstances, but that's all a fact-based inquiry. What we have here is simply both too speculative and not fairly traceable to the FDA. Can I just ask you as a follow-up to Judge Smith's question, so who is going to bring the suit to challenge this? Is it somebody that has to have contact with the product and get injured by it? Is that what you're saying? I mean, it seems to me that at that point it's too late for them. Well, of course, that would be sort of a past injury, but there may be circumstances where, depending on what the facts are, maybe nobody does, because in a situation where you're talking about the FDA making something available, if you don't like it, your remedy is, well, don't take it. And if your allegation is, well, I just in general have this general concern for the public, and you just shared this concern with the public at large, that's exactly the kind of generalized grievances that courts don't get involved in. But what you can do is say, FDA, I think you missed something, and I'm going to file a citizen petition. And you can inform them of that, and you get a letter back, and the FDA has to consider what your reasoning is, and that's sort of a process. That's in the administrative process, correct? Right. That's not in the judicial process. That's right. And I think part of the doctrine of standing is to make a line between when courts get involved in disputes and when you just leave them to the legislative or the executive branch. And this is when someone doesn't have a harm because, as respect to them in particular, they can just not take the product if they don't think it's safe, then sort of that's the remedy to keep themselves from what they think is harm, is don't take the product. But if you're trying to change it for everybody, that's just a generalized grievance, and that's the kind of thing that courts don't get into. But, again, I'm not saying that as a universal rule because there are times, for example, in the NRDC case, when the contact with the drug or device is unavoidable. And then you might have facts that are different and confer standing, but we don't have that here. But, in fact, in this particular situation, isn't it true that Dr. Gupta filed a petition with the FDA, urging the agency to revoke ALAIR, correct? That's correct. That it was neither safe nor effective, and that he submitted clinical data in support of his petition later on in December 2010 and April 2011? That's correct. And then the FDA said, too bad. Well, I mean, they gave reasons, yes, but they denied the petition. Well, denied. Wrote explaining they were denied. Right. Okay. That's correct. But merely the filing of a citizen petition, having it denied, does not itself confer standing. And the D.C. Circuit would deal with this issue quite a bit, just the fact that you're engaged in the administrative process doesn't give you article three standing. I'd be happy to answer any further questions. Questions? None. All right. And I urge you to affirm your argument. Thank you for your argument. Thank you. Okay, go ahead. Your Honor, the question is, once you file a petition and the petition is refused, where else do you go? The CFR clearly allows a judicial review of the process after the petition is denied. The patient advocacy groups have to have a standing. The FDA's contention that there are cases possible where patients can get standing to sue, that is not true. To the best of my belief, there has been no case where FDA has been successfully sued for approving an unsafe drug or device. There have been numerous such devices approved in the past which had to be withdrawn, and hundreds of thousands of patients have suffered from those devices. And FDA has never been sued from them. But that was by the patient, right? Yes, Your Honor. So patient is not eligible to sue FDA because, as they say, if you don't want to use it, don't use it. But patients don't have a choice. They don't have the time, expertise to evaluate whether the device is safe and effective. Even doctors don't have the time or facility to evaluate whether the device is safe or effective. One of the reasons is... But it seems to me what you're really asking us to do is something that unless Congress tells us we can do it, we can't. I mean, we're really applying the law as it is, which has to do with standing, and unless Congress is going to give us the right to just get right in after these agencies do something and tell them, no way, you're not going to get it, we've got to wait until somebody has the standing to bring the suit, don't we? Yes, Your Honor, that's correct. And Congress has never done anything different about this than they have any other regulation. I mean, we're always... We don't go in and try to do something. We wait for somebody to have a problem, and then we try to fix it. Your Honor, the question is how much injury is sufficient injury to give plenty of standing? I see. And in other cases, for example, the Animal Legal Defense Fund versus Glickman, a person going to a zoo, seeing that the monkey is suffering, that person suffers an aesthetic injury that is sufficient to give him standing in court. Here what we are saying is a doctor spending uncompensated time is not sufficient injury. How much injury is needed, and that depends upon the case and its value to the society. Legislative recourse is not available to patient advocacy groups because Congress has already sufficiently clear law what FDA needs to do. If the FDA doesn't do that, recourse is a judicial review of that action. How do you respond, though, to counsel's argument that even if we accept your argument that uncompensated physician time is not speculative? I mean, it's concrete, it's a real injury, but it's nonetheless not fairly traceable to any action by the FDA because maybe you should be compensated for that time, but other people regulate, you know, how much is paid for that time. Your Honor, a doctor and a patient, we can only expect to do what's reasonable. It's totally unreasonable to expect a doctor to be paid for uncompensated time, to fight with CMS, to change the physician fee schedule. This is not practical, simply. FDA's actions affect doctor's time and what doctors do in the office on a day-to-day basis. They cannot shrink the responsibility that we are not involved in patient care or we do not influence the doctor's work and the doctor-patient relationship. Those are intricately involved. FDA is intricately involved in that, and the doctor has no choice. He has to explain to the patient, right, and let his doctor say it's not effective. As my positive counsel said, that FDA spends time and FDA has a very high reputation. To counteract that reputation, you have to spend a lot of time and effort. Thank you. Thank you, Your Honor. I appreciate your argument. Case 12-56119, Physicians for Integrity in Medical Research v. Hamburg, is hereby submitted.
judges: Farris, Smith, Watford